**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JACQUAR STOKES, | : | |
| Plaintiff, | : | Civil No. 12-1478 (PGS) |
| v. | : | |
| GARY M. LANIGAN, et al., | : | **OPINION** |
| Defendants. | : | |

**APPEARANCES:**

**JACQUAR STOKES**, Plaintiff pro se
#860509C
N.J.S.P.
P.O. Box 861
Trenton, N.J. 08625

**SHERIDAN**, District Judge

　　Plaintiff Jacquar Stokes ("Plaintiff") seeks to bring this action in forma pauperis. Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.

　　At this time, the Court must review the complaint, pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such

relief. For the reasons set forth below, the Court concludes that the complaint should be dismissed.

## I. BACKGROUND

Plaintiff, incarcerated at New Jersey State Prison in Trenton, New Jersey at the time of filing, brings this civil rights action, pursuant to 42 U.S.C. § 1983, against Defendants Gary M. Lanigan, Charles Warren and Senior Corrections Officer Cobb. The following factual allegations are taken from the complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff alleges that he has been subjected to the following conditions while at New Jersey State Prison, which violate his constitutional rights: (1) electrical outlets which are directly above the toilet, posing a fire risk; (2) held in a cell with no windows for 24 hours per day, except for one 2 ½ hour recreational period per week; (3) the toilet in his cell has an inadequate flushing system; (4) the walls are covered in rust and mold; (5) prisoners in administrative segregation are only allowed to spend $15.00 at the commissary; (6) the NJSP custody staff delivers Plaintiff's food; (7) personal items seized by the staff; and (8) threats from prison staff.

Plaintiff also alleges that he needs law library access and legal research materials to properly litigate another civil

matter he has pending before the Court.  Plaintiff also states that he attempted to add his appellate attorney to his "pin list," but his request was rejected because his attorney's number is a cell phone number, which is not permitted.  Finally, Plaintiff alleges that he was denied medical attention on May 6, 2012.

Plaintiff seeks compensatory and punitive damages; a declaratory judgment; and a permanent injunction ordering his release from administrative segregation.

## II. DISCUSSION

### A. Legal Standard

### 1. Standards for a Sua Sponte Dismissal

The Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B).  This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and § 1915A because Plaintiff is proceeding as an indigent and is a prisoner.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(citing Iqbal, 129 S.Ct. at 1948).

The Supreme Court's ruling in Iqbal emphasizes that a

plaintiff must demonstrate that the allegations of his complaint are plausible. See Iqbal, 129 S.Ct. at 1949-50. See also Twombly, 505 U.S. at 555, & n. 3; Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). "A complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).

**2. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Piecknick v. Pennsylvania,

36 F.3d 1250, 1255-56 (3d Cir. 1994); <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).

**B. Analysis**

**1. Conditions of Confinement Claims**

It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993).

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying, 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Helling</u>, 509 U.S. at 32 (quoting <u>Rhodes</u>, 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994); <u>Wilson</u>, 501 U.S. at 303. A plaintiff may satisfy the objective component of a

conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety.  Rhodes, 452 U.S. at 347-48.  However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons."  Rhodes, 452 U.S. at 349.  To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society.  Id. at 347.  An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."  Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

   Here, Plaintiff's complaints regarding the electrical outlets, the delivery of food by the prison staff and commissary items do not amount to "cruel and unusual punishment."  Neither does Plaintiff's claim regarding Defendant Cobb's failure to provide Plaintiff with dinner on two occasions.  See Rodriguez v. Baeli, CIV.A. 10-4242 RBK, 2011 WL 42998 (D.N.J. Jan. 5, 2011) (citing *Berry v. Brady,* 192 F.3d 504, 507 (5th Cir. 1999) ("[w]hether the deprivation of food falls below this

[constitutional] threshold depends on the amount and duration of the deprivation."). Moreover, with regard to Plaintiff's complaints about the toilet, mold and lack of recreation, Plaintiff does not plead sufficient facts pursuant to Iqbal to allow these claims to proceed at this time. He provides only minimal information regarding these conditions and does not indicate the amount of time he suffered in these conditions.

Accordingly, Plaintiff's conditions of confinement claims will be dismissed without prejudice for failure to state a claim.

## 2. Deprivation of Property

Plaintiff asserts that he was deprived of property without due process, in violation of the Fourteenth Amendment, when his hardcover books, proof of purchase receipts and various toiletries and personal items were confiscated.

An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. Hudson v. Palmer, 468 U.S. 517, 530-36 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986). In Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause

if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.

Here, if the action of the Defendants was unauthorized, Plaintiff has failed to state a claim because New Jersey does provide a post-deprivation remedy for unauthorized deprivation of property by public employees.  <u>See</u> New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 et seq. (2001).  In addition, as Plaintiff admits, he had an administrative grievance procedure available to him.  Plaintiff has alleged no facts suggesting that Defendants deprived him of property pursuant to an established state procedure, nor has this Court located any such established procedure.  To the contrary, established state procedures require prison officials to preserve personal property of inmates.  <u>See</u>, <u>e.g.</u>, N.J. Admin. Code §§ 10A:1-11.1 et. seq. (2001).

It does not appear that amendment could cure the deficiencies in Plaintiff's deprivation of property claim. Accordingly, it will be dismissed with prejudice.

### 3.  Access to the Courts

Plaintiff states that he is a party in a separate federal civil action and he is in "dire need of law library access, and legal research materials, so that [he] can effectively litigate."

The right of access to the courts derives from the First Amendment's right to petition and the due process clauses of the

Fifth and Fourteenth Amendments.[1]  The right of access to the courts requires that "adequate, effective, and meaningful" access be provided to inmates wishing to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).  Prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825.

Bounds held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  But the right of access to the courts is not unlimited.  "The tools [that Bounds ] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and

---

[1] The right of access to the courts is an aspect of the First Amendment right to petition. McDonald v. Smith, 472 U.S. 479, 482, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985); Bill Johnson's Rests. v. NLRB, 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). Also, "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." Procunier v. Martinez, 416 U.S. 396, 419, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

incarceration." Lewis v. Casey, 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

Moreover, a prisoner alleging a violation of the right of access must show that prison officials caused previous or imminent "actual injury" by hindering efforts to pursue such a claim or defense. See Lewis, 518 U.S. at 348-51, 354-55; Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

Plaintiff fails to allege any actual injury due to the alleged denial of access to the courts. He does not allege that he was unable to file this or any other complaint in the courts. He also does not allege that any of his court cases were dismissed because he did not have timely access to the courts. He only alleges that he in "dire need of law library access, and legal research materials, so that [he] can effectively litigate." He has not provided any facts as to how this has affected his ability to pursue any legal claims or any actual injury that has occurred. Thus, the allegations in the Complaint are too

11

conclusory to show a denial of court access sufficient to rise to the level of a constitutional deprivation under the Iqbal pleading standard. This denial of access to the courts claim will be dismissed without prejudice for failure to state a claim.

**4. Phone Calls**

Plaintiff also alleges that he was not permitted to add his appellate attorney to his telephone "pin list" because her phone is a cell phone and only land lines are permitted.

Inmates have a right protected under the First Amendment to communicate with their family and friends by reasonable means. See Owens-El v. Robinson, 442 F.Supp. 1368, 1386 (W.D.Pa. 1978). Inmates' ability to communicate with their lawyers is additionally protected by their constitutional right of access to the courts and may implicate the Sixth-Amendment right to assistance of counsel in criminal proceedings. See Aswegan v. Henry, 981 F.2d 313 (8th Cir. 1992) (analyzing telephone use as access-to-courts issue).

However, it is established that a prisoner "has no right to unlimited telephone use." Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir.1994) (quoting Benzel v. Grammer, 869 F.2d 1105, 1108 (8th Cir. 1989)). Rather, an inmate's telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution." Id. (quoting Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)).

Correspondingly, an inmate's right to communicate even with his/her legal counsel is not unlimited. See Ingalls v. Florio, 968 F.Supp. 193, 203-04 (D.N.J. 1997) ("[L]imited access to telephone calls ... is not a constitutional violation so long as inmates can communicate with their counsel in writing or in person by visits."); Aswegan v. Henry, 981 F.2d at 314 (upholding a state penitentiary's policy of prohibiting prisoners from making toll-free telephone calls, even to their attorneys, because the prisoners had alternative methods of exercising the right to access the courts, and had not alleged any irreparable harm or prejudice from the policy). Hence, if an inmate has an alternative method to communicate freely and privately with his counsel, it is less likely that the restrictions on telephone use will rise to the level of a constitutional violation. See Ingalls, 968 F.Supp. at 203-04; Aswegan, 981 F.2d at 314.

"In sum, three questions relevant to issue of telephone access to counsel and the courts are (1) whether [the prisoner] has alleged facts giving rise to an inference that no legitimate penological interest was served by the ... Defendants' actions, (2) whether he has sufficiently alleged that the ... Defendants' actions caused him an 'actual injury,' and (3) whether he had alternative avenues through which he could communicate with his attorneys and the courts." Aruanno v. Main, 2010 U.S. Dist. LEXIS 3268, at *29, 2010 WL 251590 (D.N.J. Jan. 15, 2010).

13

Here, Plaintiff has failed to allege any injury he suffered as a result of his inability to add his appellate attorney's cell phone number to his "pin list." He also does not allege that he was prevented from communicating with her via alternative avenues such as in writing and in-person visits. As such, this claim will also be dismissed without prejudice.

**5. Medical Claim**

Plaintiff alleges that an inmate in a neighboring cell tried to commit suicide by starting a fire and as a result of that fire, Plaintiff suffered injuries consisting of "lungs [burning], chest on fire, [and] head pounding." Plaintiff states that he requested medical attention but never received any treatment.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999); Afdahl v. Cancellieri, 2012 WL 593275 (3d Cir. February 24, 2012). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the

inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d

217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

Here, Plaintiff has not named any defendants who failed to provide medical attention. Further, even if this Court were to assume his injuries were a "serious medical need," he has not alleged that any prison staff were deliberately indifferent to said needs. As such, this claim will be dismissed without prejudice.

**6. Verbal Threats**

Finally, Plaintiff alleges that on several occasions, Defendant Cobb verbally threatened him.

Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983. See Jean-Laurent v. Wilkerson, 438 F.Supp.2d 318, 324-25 (S.D.N.Y.

16

2006) (pretrial detainee's claim of verbal abuse not cognizable under § 1983 because verbal intimidation did not rise to the level of a constitutional violation); Ramirez v. Holmes, 921 F.Supp. 204, 210 (S.D.N.Y.1996) (threats and verbal harassment without physical injury or damage not cognizable in claim filed by sentenced inmate under § 1983).  See also Price v. Lighthart, 2010 WL 1741385 (W.D.Mich. Apr. 28, 2010); Glenn v. Hayman, 2007 WL 894213, *10 (D.N.J. Mar. 21, 2007); Stepney v. Gilliard, 2005 WL 3338370 (D.N.J. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms. 'Verbal harassment or profanity alone ... no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Aziz Zarif Shabazz v. Pico, 994 F.Supp. 460, 474 (S.D.N.Y.1998), and citing Collins v. Graham, 377 F.Supp.2d 241, 244 (D.Me.2005)). See also Moore v. Morris, 116 Fed. Appx. 203, 205 (10th Cir. 2004) (mere verbal harassment does not give rise to a constitutional violation, even if it is inexcusable and offensive, it does not establish liability under section 1983); Prisoners' Legal Ass'n v. Roberson, 822 F.Supp. 185, 187–89 (D.N.J. 1993)).

  Plaintiff's claims against Defendant Cobb for his

17

threatening comments alone are not sufficient to state a constitutional violation and will therefore be dismissed.

### III.  CONCLUSION

For the reasons stated above, the complaint will be dismissed in its entirety for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open this case and to file an amended complaint.[2]  Plaintiff's request for an injunction is dismissed as moot.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

October 1, 2012

---

[2] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed.1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.*  To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.*